**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GRETCHON WINDELL POWELL,** | ) | |
| **ID # 1607214,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:13-CV-4805-B (BH)** |
| | ) | |
| **WILLIAM STEPHENS, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant filings and applicable law, the habeas petition should be **DENIED**.

**I.  BACKGROUND**

Gretchon Windell Powell (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is William Stephens, Director of TDCJ-CID (Respondent).

**A.      Factual and Procedural History**

Petitioner challenges his convictions and sentences in case numbers 33731CR and 33732CR in the 40th District Court of Ellis County, Texas. (doc. 3, at 2; CR-01 at 46-50[1] (judgment and sentence for enhanced aggravated assault of a public servant--number 33731-CR); CR-02 at 44-48 (judgment and sentence for enhanced burglary–number 33732-CR). He pled "not guilty" to each

---

[1]"CR" refers to the Clerk's Record of pleadings and documents filed with the trial court for each case. (docs.14-2 [33731-CR] and 17-5 [33732-CR].)

charge and "true" to the enhancements. *Id.* The state appellate court recounted the evidence at trial as follows:

> Lester Taylor testified that he is the Chief of Police in Maypearl, a town of about 1,000 people, and the police department is very small. On Monday, September 15, 2008, Taylor came on duty at about 3:00 a.m., relieving Lauri Boudreau, the officer who had been on duty. Taylor patrolled the city until about 4:30 or 4:45 a.m. and then went to his office in the police department, which is located in city hall. At about 5:30 a.m., he heard someone banging on the front door of the building, which was closed and locked with a dead bolt. He got up and went to the door of his office. Just after Taylor stepped through his office door, he heard "[o]ne hard thud" and "the front door flung open and a black male entered." Taylor drew his service weapon, a nine-millimeter pistol that he carried cocked with the safety on, and pointed it at the man, whom he later identified as Powell. He asked Powell why he had kicked in the door, and he responded, "Where am I?" Taylor told Powell that he was in the police department. Taylor was wearing a shirt that showed his badge along with his name and identification as the Chief of Police. Powell then said that he needed help because he had been in an accident and there might be injuries.
>
> Taylor asked Powell to put his hands on the wall and "looked at him just to see if he had anything on him," but Taylor did not see anything. Taylor then asked Powell for identification. Powell took a wallet out of his pocket, took the driver's license out, put the driver's license on top of the wallet, and handed Taylor both the driver's license and the wallet. Taylor looked at the driver's license and verified that it belonged to Powell.
>
> Once Taylor had identified Powell, he told him they would have to walk down the hall to the back door. They did so and then went out into the bay of the city maintenance barn where Taylor's marked squad car was parked. Taylor told Powell to get into the car, but Powell instead walked to the center part of the bay. Taylor walked to the bay door to raise it with a chain. Taylor had to holster his weapon to raise the door, but he was watching Powell. However, the chain slipped as Taylor was raising the door, and he took his eye off Powell. Taylor was then hit from the rear and pushed into the wall. Powell got Taylor's pistol and told Taylor to pull the door down or he would shoot Taylor. Taylor pulled the door down.
>
> Taylor began pleading with Powell not to shoot him, but Powell pointed the gun at Taylor and pulled the trigger. When the gun did not fire, Taylor ran toward the back of another squad car, hoping that the door might be unlocked and he would be able to get a shotgun out of it. When he got to the rear of the squad car, Powell yelled at him to stop or he would shoot. Taylor hesitated and looked at Powell, who was still pointing the gun at Taylor and pulled the trigger again. Taylor then ran around the squad car, and Powell pulled the trigger once more. The third time, Powell was

2

using both hands to try to fire the gun. Taylor said that he was in fear of imminent bodily injury and that Powell clearly intended to kill him each time he pulled the trigger.

When the gun did not fire on the third try, Powell started fumbling with the gun and the magazine fell out. While Powell was trying to put the magazine back in the gun, Taylor ran to the back door and was able to close and bolt it. He then locked himself in his office with a loaded shotgun and called 9–1–1. Deputies from the Ellis County Sheriff's Department arrived shortly thereafter, and a SWAT team searched the building, but Powell was not found. Taylor never recovered his pistol, and Officer Boudreau testified that, after that day, she never again saw him with the pistol.

Taylor identified Powell at trial as the person who broke in and tried to shoot him. Taylor stated that the building was not open to the public at 5:30 a.m. and that Powell did not have consent to enter the building that morning. The door that was kicked in had a wooden box attached to it where people would place payments on the weekends when city hall was not open. Taylor said that people often get paid on Fridays and pay their utilities over the weekend.

Robert Allwardt and Mike Aman, investigators with the Ellis County District Attorney's office, testified that they responded to the scene. Allwardt stated that, among other things, he talked to Taylor and took fingerprints from the areas that Powell might have touched at the scene, but none of the fingerprints collected were identified as belonging to Powell. Both Allwardt and Aman also testified that they did not know why the Ellis County Sheriff's Department did not conduct the investigation.

The next day, Allwardt went to Powell's last known address. There, he met the manager of the residence and confirmed that Powell had, in fact, resided there. Allwardt then discovered some papers that were identified to be Powell's next to a computer in the common area. The Maypearl City Hall address was written in the lower right-hand corner of one of the papers. The manager of the residence acknowledged that the paper was at Powell's residence at a computer that he had access to, but he could not say with certainty that the paper with the address was Powell's because four men had access to the notepad where the address was written.

Texas Ranger Danny Briley testified that after observing the scene, discussing the events with the other investigators, and talking with Taylor, he obtained an arrest warrant for Powell. Powell was arrested, and Briley then interviewed him. Powell gave a written statement in which he admitted kicking in the door, but, contrary to Taylor's testimony, he stated that he ran away when Taylor tried to open the bay door. Powell's written statement does not discuss Taylor's accusation that Powell took Taylor's gun and tried to shoot Taylor. On cross-examination, Briley additionally stated that he remembered another discussion with Powell:

> Gretchon told me that he needed some weed. He needed a hookup,
> and that he would be paid some money, have X amount of dollars if
> he would go kick in the door to the Maypearl Police Department, but
> that once he busted the door down, his part was done.

> Powell told Briley there were two accomplices, Little C and Little Cousin.

> The defense presented the testimony of two investigators from the Ellis County
> Sheriff's Office. Jason Westmoreland testified that he was initially assigned to begin
> an investigation into what happened at the Maypearl Police Department. However,
> later that day, his lieutenant advised him "per the sheriff" that he was not to conduct
> any further investigation. He heard from deputies talking at the scene that the sheriff
> did not want to be involved because he thought there was something strange about
> the way the situation had "gone down" and he wanted an outside agency to
> investigate it. On cross-examination, Westmoreland acknowledged that he had not
> talked to the sheriff about it and agreed that "a bunch of deputies [were] shooting
> their mouths off" and there was not any truth to any of it. Phillip Slaughter, the other
> investigator, testified that he initially responded to the scene at the Maypearl Police
> Department but was later ordered to leave the scene by the sheriff.

*Powell v. State,* 2011 WL 2242483, at *1-3.

On October 20, 2009, a jury found Petitioner guilty and sentenced him to 70 years for the aggravated assault charge, and 10 years for the burglary charge, to be served concurrently. *Id.* Petitioner filed a direct appeal, and his convictions were affirmed by the Waco Court of Appeals in June of 2011. *Powell v. State,* Nos. 10–09–00364–CR and 10–09–00365–CR, 2011 WL 2242483 (Tex. App.– Waco, 2011). He did not file a petition for discretionary review. (doc. 3, at 3.) Petitioner filed two state applications for writ of habeas corpus, but they were denied by the Texas Court of Criminal Appeals without written order on October 16, 2013. *Ex parte Powell,* WR-77,283-01, and WR-77,283-02, at covers. (Tex. Crim. App. Oct. 16, 2013).

Petitioner mailed his federal petition for relief under § 2254 on December 4, 2013. (doc. 3 at 10.) Respondent filed an answer and provided the state court records. (docs. 13-19, 22). Petitioner then filed a traverse. (doc. 23).

4

C.      **Substantive Issues**

Petitioner listed seventeen separate grounds for relief in the § 2254 petition:

●There was insufficient evidence to support the convictions for aggravated assault on a public servant or burglary with intent to commit theft (Grounds 1 and 2).

●He was denied effective assistance of counsel because his trial attorney:

      failed to file a motion to suppress or object to Petitioner's statement admitted into evidence (Ground 3);

      failed to request witness statements or move that the statements be stricken from the record (Ground 4);

      failed to instruct the jury to disregard inadmissible evidence (Ground 5);

      advised him that he had a sheriff to testify for his defense, causing him to turn down plea offers (Ground 6);

      failed to object to illegal jury argument (Ground 7);

      failed to object or move for mistrial when the prosecution submitted evidence of Petitioner's criminal history through his prior statement (Grounds 8 and 9) ;

      failed to object to the imposition of an illegal sentence for his burglary conviction (Ground 10);

      committed cumulative errors rendering him ineffective (Ground 11).

●The trial court violated his due process rights by:

      imposing an illegal sentence for his burglary conviction (Ground 12); and

      giving a jury charge containing a mandatory presumption which allowed the jury to convict without proof of every element of the offense (Ground 16).

●The prosecution violated his due process rights by

      failing to turn over exculpatory statements before trial which denied Petitioner impeachment evidence (Grounds 13); and

      introducing perjured testimony at trial (Ground 14).

●The State violated his Sixth Amendment right to counsel at a critical stage of the proceedings (Ground 15).

●He is actually innocent of both offenses (Ground 17).

(doc. 3 at 6-10.)

## II.  LACK OF EXHAUSTION/ PROCEDURAL BAR

Respondent argues that Petitioner has failed to exhaust some of his ineffective assistance (grounds 6, 7, 8, 9, and 11) and due process grounds (ground 16). (doc. 22 at 8-11.)  Respondent further argues that any attempt to exhaust these grounds for relief would be futile because the grounds are now procedurally barred from review.

### A.    Exhaustion

A petitioner must fully exhaust state remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner.  *Satterwhite v. Lynaugh*, 886 F.2d 90, 92–93 (5th Cir.1989). While a federal court has limited discretion to stay a habeas petition and hold it in abeyance so a prisoner can return to state court to exhaust previously unexhausted claims, see *Rhines v. Weber,* 544 U.S. 269, 275 (2005), Texas law prohibits a prisoner from filing a second or successive application for post-conviction relief if the grounds stated could have been, but were not, raised in a prior state writ. See Tex. Code Crim. Proc. Ann. art. 11.07, § 4 (Vernon 2005).  Article 11.07, § 4 provides that the state habeas court may not consider the merits of or grant relief based on a subsequent application unless the application contains sufficient specific facts establishing that: 1) the claims could not have been presented in the previous application because the factual or legal basis for the claim was unavailable at that time; or 2) by a preponderance of the evidence that but for a violation of the United States Constitution, no rational juror could have

6

found the applicant guilty beyond a reasonable doubt.

As noted, Petitioner filed separate applications for writ of habeas corpus under article 11.07 challenging his convictions. He raised all of the claims challenged by Respondent, except for his ineffective assistance claim that he turned down a plea offer because counsel had told him that the Sheriff was going to be a witness for him (ground 6). *See Ex parte Powell*, WR -77,283-01 at 66-79 (application grounds); 84-113 (memorandum in support): WR-77,283-02 at 70-84 (application grounds); 88-119 (memorandum in support). He has not alleged, much less shown, that this ground could not have been presented in his state writ application. *Id.* Because Petitioner did not present this claim in his state habeas application, and he did not file a petition for discretionary review to include this claim, it is unexhausted.

**B.    Procedural Bar**

Procedural default at the federal habeas level occurs when a prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991). Petitioner already filed state writ applications challenging his convictions, so any attempt to file for another state writ challenging the same would result in a citation for abuse of the state writ by the Texas Court of Criminal Appeals. *See Ex parte Whiteside*, 12 S.W.3d 819, 821-22 (Tex. Crim. App. 2000). It is well-settled that citation for abuse of the writ by the Court of Criminal Appeals constitutes a procedural default that bars federal habeas review of the merits of a habeas petitioner's claims. *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). The Fifth Circuit has noted that the Texas Court of Criminal Appeals applies its abuse of the writ rules regularly and strictly. *Fearance,*

56 F.3d at 642.  Petitioner's sixth ground should be dismissed with prejudice as procedurally barred.

**C.**     **Excuse**

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013),[2] the Supreme Court recognized that lack of counsel in a state habeas proceeding excuses a procedural default with regard to "substantial" claims of ineffective assistance of counsel. *See Martinez,* 132 S. Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). *Martinez* does not provide a substantive claim for federal relief, only cause to excuse a procedural bar.  *See Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014) (holding that once a claim is considered and denied on the merits by the state habeas court, *Martinez* is inapplicable).

As discussed below, Petitioner has not shown that his ineffective assistance claim is substantial and has merit*.  See generally Preyor v. Stephens*, 537 F. App'x 412, 422 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2821 (2014) (holding that the effectiveness of state habeas counsel makes no difference to the outcome where the district court alternatively held that ineffective claims against trial counsel were not substantial and lacked merit).  *Martinez* therefore does not bar the determination that this ground is procedurally barred.

### III.  AEDPA STANDARD

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

---

[2]In *Trevino v. Thaler*, the Court extended the holding of *Martinez v. Ryan* to Texas.  *Trevino,* 132 S. Ct. at 1921.

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-
> > sonable application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-
> > ation of the facts in light of the evidence presented in the State court
> > proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

ural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established fed-

eral law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently

than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state

court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case."  *Id.* at 413; *accord Penry v. Johnson*, 532

U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it

"unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, the state appellate court considered Petitioner's insufficient evidence claims and denied them on their merits. *Powell v. State,* 2011 WL 2242483 at *1-5. The Court of Criminal Appeals denied his detailed state habeas applications without a written order. WR 77,283-01 and 02 at cover. The fact that the Court of Criminal Appeals did not make explicit findings on every issue does not mean that it "merely arrived at a legal conclusion" unworthy of the presumption of correctness. *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (presumption of correctness applies to both explicit findings of fact and implicit unarticulated findings necessary to support a state court's conclusions of mixed law and fact) (citing *Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983) (applying presumption of correctness to implicit finding regarding defendant's credibility, where such finding was necessarily part of the court's rejection of the defendant's claim)). The denial of

Petitioner's state writ applications was an adjudication on the merits. See *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits").

Petitioner has not shown that the state courts' resolution of his claims was contrary to or involved an unreasonable application of clearly established Federal Law, as determined by the Supreme Court of the United States, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1) and (2).[3] Deference to the state court determinations is therefore warranted.

## IV.  SUFFICIENCY OF THE EVIDENCE

In his first and second grounds for relief, Petitioner contends the evidence is legally insufficient to support his convictions for aggravated assault on a public servant and burglary of a building with intent to commit theft. The state appellate court rejected these claims on direct appeal. *Powell,* 2011 WL 2242483, at *3-5.

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353,

---

[3]Petitioner's claims each consist of one or two sentences without citation to the record or legal authority. (doc. 3, at 6-10.)  All of his grounds could be denied as conclusory or constructively waived due to inadequate briefing. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (the petitioner must provide more than "conclusory allegations unsupported by specifics"); *see also Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002) (a statement of a legal conclusion, without a serious attempt to argue or substantiate the issue, is a waiver or abandonment of the issue).  In an abundance of caution, his more detailed briefing in support of his state writ applications has also been considered. *See Ex parte Powell*, WR-77,283-01, at 84-113 (memorandum in support); WR 77-283-02 at 88-119 (memorandum in support).

358 (5th Cir. 2002). To be sufficient, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012). Under *Jackson*, a reviewing court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). The evidence must be viewed "in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)); *see also Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995) (a federal court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict).

Here, the court of appeals applied the appropriate standards of review and found the evidence sufficient to support the convictions, explaining:

> In his first issue, Powell contends that the evidence is insufficient to support his conviction for burglary of a building. A person commits the offense of burglary of a building if, without the effective consent of the owner, the person enters a building not then open to the public, with intent to commit theft. TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003).
>
> Powell first argues that the evidence is insufficient because, although he may have broken down the door to the building and committed criminal mischief, he did not enter the building. Instead, Powell claims that Taylor ordered him into the building. However, Taylor testified that "the front door flung open and a black male entered." The jury obviously believed Taylor's testimony over Powell's written statement, and we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793.

12

Powell next argues that the evidence is insufficient to establish that he intended to commit theft because it is "mere conjecture by the State that Appellant intended to rob the cash from the night deposit box which [w]as mounted on the back of the door." However, in a prosecution for burglary, the specific intent to commit theft may be inferred from the circumstances. *Goodeaux v. State*, 269 S.W.3d 730, 734 (Tex. App. – Beaumont 2008, no pet.) (citing *Simmons v. State*, 590 S.W.2d 137, 138 (Tex. Crim. App. 1979)). Here, in addition to Taylor's testimony that people often pay their utilities over the weekend, that the offense occurred early Monday morning, and that the lockbox where people would place their payments was on the back of the door that Powell kicked in, Powell admitted in his written statement that, before kicking in the front door, he had looked in the windows on the back side of the building and did not see anyone in the building. Taylor also testified that entry was made without consent at about 5:30 a.m. *See Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982) ("[A]n entry made without consent in the nighttime is presumed to have been made with intent to commit theft."). The jury could have reasonably inferred Powell's intent to commit theft.

Viewing all the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Powell's conviction for burglary of a building with intent to commit theft. We overrule Powell's first issue.

In his second issue, Powell contends that the evidence is insufficient to support his conviction for aggravated assault on a public servant. A person commits the offense of aggravated assault of a public servant if he intentionally or knowingly threatens a person that the actor knows to be a public servant with imminent bodily injury while the public servant is lawfully discharging an official duty and uses or exhibits a deadly weapon during the commission of the assault. See TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B) (Vernon Supp. 2010).

Powell argues that the evidence is insufficient because Taylor's version of events is "incredulous" and points instead to the testimony presented by the defense witnesses, which he claims establishes that the sheriff of Ellis County thought that something was not as it seemed. In his pro se reply brief, Powell argues that the jury was presented with contradictory and false evidence and that Taylor's version of the events is "unreasonable and irrational." However, by finding Powell guilty, the jury obviously believed Taylor's testimony. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App. – Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). A jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *see also Sharp*, 707 S.W.2d at 614. We must defer to the jury's

determination concerning what weight to give any contradictory testimonial evidence. *See, e.g., In re A.B.*, 133 S.W.3d 869, 873–74 (Tex. App. – Dallas 2004, no pet.); *Scugoza v. State*, 949 S.W.2d 360, 362–63 (Tex. App. – San Antonio 1997, no pet.); *Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex. App. – Houston [14th Dist.] 1989, pet. ref'd).

Viewing all the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Powell's conviction for aggravated assault of a public servant. We overrule Powell's second issue.

*Powell,* 2011 WL 2242483, at **4-5  (footnote omitted).

In this case, the jury was the fact-finder, and it was within its sole province to assess the credibility of the witnesses and resolve any conflicts in the evidence.  *See United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999); *United States v. Monroe,* 178 F.3d 304, 307 (5th Cir. 1999) ("it is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate the credibility of witnesses") (citing *United States v. Ivey*, 949 F.2d 759, 767 (5th Cir. 1991); *United States v. Layne*, 43 F.3d 127, 130 (5th Cir. 1995) ("It is the jury's 'unique role' to judge the credibility and evaluate the demeanor of witnesses and to decide how much weight should be given to their testimony")). A jury is not to be second-guessed by a reviewing court in its choice of which witnesses to believe. *See United States v. Zuniga*, 18 F.3d 1254, 1260 (5th Cir. 1994) (citing *United States v. Jones*, 839 F.2d 1041, 1047 (5th Cir. 1998)).  On federal habeas review of a jury verdict in state court, "[a] federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts." *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985).  Moreover, "[t]he habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact." *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)). Any credibility choices and conflicting inferences are resolved in favor of the jury's verdict and do not render the evidence legally

insufficient. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (stating that in a legal sufficiency review, all credibility choices and conflicting inferences are to be resolved in favor of the verdict) (citing *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)).

Giving due deference to "the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," the evidence presented at Petitioner's trial was enough to support his conviction. *See Jackson*, 443 U.S. at 319. Furthermore, he does not argue, much less establish, that the state appellate court's denial of his insufficiency of the evidence grounds is a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Petitioner has failed to demonstrate that the state appellate court unreasonably applied the *Jackson* sufficiency standard, and he is therefore barred from re-litigating the legal insufficiency claim under 28 U.S.C. § 2254(d). His first and second grounds must be denied.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third through eleventh grounds for relief, Petitioner claims that trial counsel was ineffective by failing to file a motion to suppress or object to Petitioner's statements admitted into evidence; failing to request witness statements or move that such statements be stricken from the record; failing to instruct the jury to disregard inadmissible evidence; advising him that he had a sheriff to testify for his defense, causing him to turn down plea offers; failing to object to illegal jury argument; failing to object or move for mistrial when the prosecution submitted evidence of Petitioner's criminal history; failing to object to the imposition of an illegal sentence for his burglary conviction; and committing cumulative errors. (doc. 3 at 6-9.)

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n

all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id*. at 691. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen* v. *Pinholster*, 131 S. Ct.1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 690)). This standard not only gives trial counsel the benefit of the doubt; it affirmatively entertains the range of possible reasons he may have had for proceeding as he did. *Id*. at 1407.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors.

16

*Strickland*, 466 U.S. at 695-96.

In habeas proceedings, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not whether defense counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 526 U.S. 86, 101 (2011). This review is "doubly deferential" and gives both the state court and the defense attorney the benefit of the doubt. *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013).

## A.      Petitioner's statement (Ground 3)

Petitioner asserts his trial counsel should have objected to the admission of, or filed a motion to suppress, his statement. (doc. 3 at 7.)  He claims that the police arrested him without a warrant, he requested an attorney, and the police coerced his statement with threats and promises. *Ex parte Wilson,* WR 77,283-01, at 89-91; WR 77,283-02, at 93-96.   According to uncontested trial testimony, Petitioner was arrested pursuant to a warrant, he was given the warnings required by *Miranda v. Arizona,* 384 U.S. 436 (1966), he never asked for an attorney, and he was not treated improperly or in any way coerced into making a statement. 4 RR 179, 182–88.[4]  His statement was admitted into evidence and read to the jury only after these facts were established before the trial court. 4 RR 189-93; 7 RR Exhibit 50.  Petitioner's bald assertions conflict with the record, and this claim should be denied as conclusory and meritless. *Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and  unsupportable by anything else contained in the record, to be of probative evidentiary value."))

---

[4]"RR" refers to the reporter's record preceded by the applicable volume number and followed by the applicable page number.

In addition, Petitioner fails to rebut the presumption that his attorney acted based on trial strategy. *See Strickland*, 466 U.S. at 689 (internal citation omitted) ("the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). Petitioner did not testify at trial. He would have been subject to cross-examination concerning his numerous prior convictions for burglary if he had. *See* 6 RR 6–8 (Petitioner's plea of "true" to five different prior burglary convictions). A motion to suppress would have hinged on his testimony, which would have been undermined by his criminal history. *Id.* The admission of his statement strategically put his version of the events before the jury without him having to take the stand. This claim should be denied.

**B.     Witness statements (Ground 4)**

Petitioner complains of counsel's failure "to request copies of the witnesses statements or move that their testimony be stricken from the record." (doc. 3 at 7.) He does not specify which statements he believes should have been requested or should have been stricken. *Ex parte Powell, 77,283-02,* at 97–99. He does not establish that his attorney failed to request the statements or even that they ever existed. Petitioner's claim is conclusory and fails to establish any deficiency or prejudice by his attorney. *See Ross v. Estelle*, 694 F. 2d at 1011.

**C.     Jury instructions (Ground 5)**

Petitioner next complains of counsel's failure to seek a jury instruction to disregard evidence that was found to be inadmissible. (doc. 3, at 8.) The jurors actually were instructed to disregard inadmissible evidence. *Ex parte Powell,* WR 77,283-02, at 34-39; 5 R.R. at 9, 11 (Reading of Charge.) The jury charge provided:

> As to any offer of evidence that has been rejected by the Court, you, of course, must not consider the same. As to any question to which an objection was sustained, you

must not conjecture as to what the answer might have been or as to the reasons for the objection . . .

During your deliberations in this case, you must consider, discuss, nor relate any matters not in evidence before you.

Jury Charge, WR-77,283-02, at 37-38.  Petitioner's claim is factually wrong and must be denied.

## D.     Advice regarding plea offer (Ground 6)

Petitioner complains that counsel "gave Petitioner incorrect an[d] insufficient advice which undermined his ability to make an intelligent decision about whether to accept plea offers." (doc. 3 at 8.)  He also alleges that counsel assured him that he had obtained the favorable testimony of a sheriff to be a witness on his behalf.  *Id.*

The record reflects that Petitioner signed a "Rejection of Plea Bargain" in which he acknowledged that he had turned down offers of "20 years" on the aggravated assault on a public servant charge and "10 years" on the burglary charge, and that "my attorney has made the recommendation that I accept said plea bargain. I do not wish to follow the recommendation of my attorney." CR-01, at 26; CR-02, at 27.  Petitioner did not include this claim in the multiple grounds for relief that he presented in state court. *See Ex parte Powell,* WR 77-283-01*,* at 84‒112; WR 77-283-02, at 88‒119.[5]  He does not identify the incorrect advice and he provides no evidence in support of his claim.  It should be denied on the merits.  *See Ross v. Estelle*, 694 F. 2d at 1011.

## E.     Jury argument (Ground 7)

Petitioner contends that counsel "failed to object to illegal jury argument." (doc. 3 at 8.)  He claimed that the prosecutor had attacked his character by arguing that he had minimized his conduct and had changed his story, effectively calling him a liar, and presented untrue information to the jury

---

[5]As noted, this ground for relief is unexhausted and now procedurally barred from review.

about Petitioner's parole status. WR 77-283–01, at 99 (citing 5 RR 21-22, 29.)

Petitioner cites in part to his own attorney's closing arguments. 5 RR 21-22. The prosecutor argued that Petitioner's statement included efforts to "minimize his conduct to minimize his punishment" and that there were discrepancies between the statement and other facts. 5 RR 27-29.

Under Texas law, a proper jury argument includes (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence (3) response to opposing counsel's argument; and (4) pleas for law enforcement. *See Cobble v. State*, 871 S.W. 2d 192, 204 (Tex. Crim. App. 1993) (citations omitted). In habeas corpus proceedings, allegedly improper prosecutorial statements made during a state trial are reviewed to determine whether they "'so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process.'" *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5 Cir. 1996) (internal quotation omitted). This means the alleged conduct must render the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *see also Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (1985). "Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or . . . the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002).

Petitioner does not allege that any of the prosecutor's statements amounted to the kind of misconduct that rendered his trial fundamentally unfair. He has not shown that no conviction would

20

have occurred absent these remarks.  This ground for relief should be denied.

## F.    Criminal history (Grounds 8 and 9)

Petitioner next complains that counsel failed to move for a mistrial based on the admission of evidence of his criminal history and to object to the admission of his unredacted statement, which contained inadmissible evidence of past convictions. (doc. 3 at 8.)  He cites no facts to support his claims that the prosecutor violated a standing trial order prohibiting introduction of evidence of his prior convictions and made a statement that he had been on parole. WR 77,283-01, at 100-01.  A petitioner seeking habeas relief in federal court must provide more than "conclusory allegations unsupported by specifics."  *Blackledge v. Alllison,* 431 U.S. 63, 74 (1977); *see also Woods v. Cockrell,* 307 F.3d 353, 357 (5th Cir. 2002) (rejecting any claim that § 2254 petition could be construed to embrace prior issues as inadequately briefed and waived) (citing *Martin v. Cain*, 246 F.3d 471, 475 n.1 (5th Cir. 2001) (other citations omitted).  This claim must be denied.

## G.    Sentence (Ground 10)

Petitioner claims that counsel "failed to object to the imposition of an illegal sentence." (doc. 3 at 9.)  He claims that counsel should have prevented him from being convicted as a habitual offender because two of his felony convictions were on the same date. WR 77,283-02, at 104–105 (citing *Ex parte Huff*, 316 S.W.2d 896 (Tex. Crim. App. 1958)).  He pled true to five prior burglary convictions that occurred on three different dates, however. 6 RR 6–8.  Counsel is not required to present frivolous objections. *See Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002).  This ground must be denied.

## H.    Cumulative error (Ground 11)

Petitioner contends that counsel's "representation as a whole fell below an acceptable level

of reasonableness" because his "numerous mistakes and deficient performance resulted in Petitioner's conviction and severe sentence." (doc. 3 at 9.) He fails to identify a single mistake by counsel, much less an accumulation, that amounted to a denial of effective assistance of counsel.

All of Petitioner's ineffective assistance of counsel claims must be denied.

## VI.  DUE PROCESS

In his twelfth ground, Petitioner asserts that the trial court violated his due process rights by imposing an illegal sentence for his burglary conviction because the enhancement of his sentence from a state jail felony to a third degree felony was not authorized.  (doc. 3 at 9.)  He raised this claim in his state writ application.  WR 77,283-02, at 112-113.  As discussed above in reference to Petitioner's related allegation of ineffective assistance of counsel (ground 10), the enhancement was supported by evidence of his five prior burglary convictions on three different dates. 6 RR 6-8.  This was more than enough to subject him to a sentence as a habitual offender.  The trial court did not err, and Petitioner's claim of a violation of due process is without merit.

## VII.  JURY CHARGE

In his sixteenth ground, Petitioner also complains that the trial court violated his due process rights because the jury instructions contained a "mandatory presumption" that relieved the state of the burden of proving an element of the assault on a public servant charge.  (doc 3 at 9.)  He complains that the trial court instructed the jury under Penal Code § 22.02 that "the actor is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant," without also including a definition under the Penal Code § 2.05 regarding mandatory or permissive presumptions. WR 77, 283-01, at 109. The instruction recited from § 22.02 is a correct statement of law, so

Petitioner has not shown error.

Further, in order to warrant federal habeas relief on the basis of a violation of due process based on errors in the trial court's instructions to the jury, the court must find that the jury charge error rendered the entire trial fundamentally unfair. *See Thompson v. Lynaugh,* 821 F.2d 1054, 1060 (5th Cir. 1987) (citing *Henderson v. Kibbe,* 431 U.S. 145, 154-55 (1977)). The question is whether the alleged invalid instruction "by itself so infected the entire trial that the resulting conviction violated due process, not merely if the instruction was undesirable, erroneous, or universally condemned." *Wright v. Director, TDCJ*, No.9:11-CV-204, 2012 WL 7159911, at * 20 (E.D. Texas Oct. 2, 2010) (citing *Henderson*, 431 U.S. at 155)), *rep. and rec. adopted*, 2013 WL 607850 (E.D. Tex. Feb. 19, 2013).  Petitioner has not argued that the alleged error in instructing the jury rendered the entire trial fundamentally unfair.  He does not argue, much less establish, that the state court's denial of this claim is a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The resolution of this claim is barred from re-litigation under § 2254(d) and must be denied.

## VII. PROSECUTORIAL ERROR

Petitioner complains in his thirteenth and fourteenth grounds that the prosecution violated his due process rights by failing to turn over exculpatory statements before trial and introducing perjured testimony at trial. (doc. 3 at 9.)

The appropriate standard of review for a claim of prosecutorial error on a writ of habeas corpus is "the narrow one of due process." *Darden,* 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). "Although the asserted prosecutorial misconduct may have made the defendant's trial less than 'perfect', that imperfection must have rendered the trial

'unfair' in order to be 'constitutional error.'" *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (citing *Darden, supra*). "The test to determine whether a trial is fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Id.* (citing *Kirkpatrick*, 777 F.2d at 278-79).

## A.   *Brady* violation (Ground 13)

Petitioner asserts that the prosecution withheld exculpatory evidence, i.e., a witness statement and reports from the Sheriff's office, that should have been turned over to the defense. (doc. 3 at 9); WR 77,283-02 at 107–109.

The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that the suppression by the prosecution of evidence favorable to an accused after a request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, a petitioner must prove the following elements: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it may be used as impeachment evidence; (2) the evidence must have been suppressed by the state; and (3) prejudice  must have ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

Prejudice results when the suppressed evidence is "material." *Banks,* 540 U.S. at 691 (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)) "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1978). Instead, the evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the  result of the proceeding would have been different." *Miller v. Dretke*, 404 F.3d 908, 913-16 (5th Cir. 2005) (quoting *United States v. Bagley*, 473 U.S. 667, 682

(1985)); *see also Banks*, 540 U.S. at 698-99 (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.  *Bagley*, 473 U.S. at 682.  In assessing the materiality of undisclosed impeachment evidence, "we must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony." *United States v. Weintraub*, 871 F.2d 1257,1262 (5th Cir. 1989).

Moreover, there is no *Brady* violation if the defendant, using due diligence, could have obtained the information. *See West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.") (citing *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir.1994)); *see also Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994) (citing *United States v. Ramirez*, 810 F.2d 1338, 1343 (5th Cir. 1987)).

At the state level, Petitioner submitted a letter from the prosecution with his state writ application indicating that the State disclosed the witness statement before trial. WR 77,283-01, at 117-18.  In addition, the prosecutor provided an affidavit during the state writ proceedings in which he stated that he discussed the contents of the statement with Petitioner's attorney. WR 77,283-01, at 152-53. Petitioner also presented a letter from his counsel, dated over a year after trial, stating that he never received a copy of the statement and did not believe one existed. WR S77,283-02 at 131. The prosecution's letter demonstrates some evidence that the statement existed and that Petitioner's attorney was notified of its existence before trial. WR 77,283-02 at 123, 162–63 (copy of the statement).  Moreover, the statement does not appear to be inconsistent with the witness's testimony at trial, so Petitioner fails to show how it is exculpatory or material.  *Compare* WR 77,283-02 at

162–63 (statement) with 4 RR 30-40, 67-73 (testimony).

As for the other reports, Petitioner fails to demonstrate that the reports existed, or that they included material or exculpatory information and were not disclosed. *See* WR 77,283-02 at 159-60 (prosecutor's affidavit stating that he did not receive any additional paperwork or reports from the sheriff's office). Petitioner has failed to support any of the elements necessary to sustain a *Brady* claim. *See Brady,* 373 U.S. at 87. This ground for relief must be denied.

## B.   Perjured testimony (Ground 14)

Petitioner next asserts that the prosecution obtained his conviction through the use of perjured testimony, claiming "several of the State's witnesses perjured themselves about relevant matters at trial." (doc. 3 at 9); WR 77,283-02, at 109–11.

While the use of perjured testimony may violate due process, "[t]o obtain a reversal based upon a prosecutor's use of perjured testimony or failure to correct such testimony, a habeas petitioner must demonstrate that '1) the testimony was actually false, 2) the state knew it was false and 3) the testimony was material.'" *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998) (citation omitted). Petitioner fails to demonstrate any of these elements. At most, he complains of discrepancies in the witnesses' testimony. *See* WR 77, 283-02, at 110–11; *see generally Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir.2002) (perjured testimony not established simply where testimony is inconsistent with prior statements). He does not argue, much less establish, that the state court's denial of this claim is a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. This claim is barred from re-litigation under § 2254(d) and must be denied.

## VIII.  DENIAL OF COUNSEL

In his fifteenth ground, Petitioner complains that the state violated his right to counsel by denying him counsel at a critical stage of proceedings. (doc. 3 at 9); *see also* WR 77,283-02, at 118–19 (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984) (recognizing that a trial is unfair if the defendant is denied counsel at a critical stage).  He complains the state "failed to turn over witness statements per a standing order, thereby denying Petitioner impeachment evidence and counsel." (doc. 3, at 9.)[6]  The alleged failure of the prosecution to turn over discovery does not implicate the right to counsel. This claim is without merit and must be denied.

## IX.  ACTUAL INNOCENCE

In his seventeenth ground, Petitioner claims he is actually innocent due to the alleged prosecutorial misconduct, ineffective assistance of counsel, and perjury. (doc. 3 at 10.)

In  *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence does not and has never been a basis for federal habeas relief absent an independent constitutional violation in the state proceeding.  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-- not to correct errors of fact."  *Id*. The Court assumed for the sake of argument that in a capital case, a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and warrant federal habeas relief if no state avenue existed to entertain the claim. It stated that the threshold showing for such an "assumed right" would be "extraordinarily high." *Id.* at 417. The Court then concluded that conflicting affidavits, submitted eight years after a trial, when considered in light of the strong evidence

---

[6]Respondent addressed this claim as an ineffective assistance claim, but Petitioner makes a direct claim that the State denied his Sixth Amendment right to counsel when it failed to turn over witness statements. (doc. 3, at 9.)

presented at trial supporting guilt, did not meet this threshold. *Id*. at 417–18.

The Fifth Circuit has specifically rejected the theory that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir.2000).  Moreover, the State of Texas does have an avenue in which to pursue actual innocence claims. *In State ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398–99 (Tex.Crim.App.1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief where a petitioner establishes as a threshold that the newly discovered evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in it. Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208–09 (Tex.Crim.App.1996), the court held that in order for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence.

Here, the state habeas courts denied Petitioner's actual innocence claims on the merits. WR 77,283-01 and 02, at covers.  Even if federal habeas relief were available on the basis of a stand-alone actual innocence claim, Petitioner would not be entitled to relief.  He has failed to offer "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial" to support his claim that he is actually innocent. (doc. 3, at 10.)  He essentially reasserts the same claims raised in his other issues. *Id.* None of these involve any newly discovered evidence. Since Petitioner does not present any new reliable evidence, his claim that he is actually innocent of the offenses is not cognizable and should be denied.

## X.  RECOMMENDATION

The petition for habeas corpus relief under § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 11th day of June, 2015.**

_____

IRMA CARRILLO RAMIREZ

UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____

IRMA CARRILLO RAMIREZ

UNITED STATES MAGISTRATE JUDGE